IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD J. JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>GERALD JOHNSON,<br><br>Defendant. | 1:15-cv-01793 MJS<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**<br><br>(ECF No. 7) |

**I.     INTRODUCTION**

Defendant Gerald Johnson moves the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Edward J. Johnson's complaint for failure to state a claim upon which relief can be granted. For the reasons stated below, it is ordered that Defendant's motion be denied.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

The essential allegations as set forth in the Complaint can be summarized as follows: Plaintiff and Defendant are brothers. (Compl. ¶ 7.) In 2005 they entered into an oral partnership to invest in real estate in hopes of increasing their individual retirement funds. (Id. ¶ 8.) Unfortunately, things did not go well, and it appears that most of the investments resulted in losses for the partnership.

Relevant to the present lawsuit, the Partnership held two one-bedroom

condominium units in Fresno, California ("Fresno Properties") (Id. at ¶¶ 18-25), and a condominium unit in Pittsburgh, Pennsylvania, ("Pittsburgh Property") (Id. at ¶¶ 31-41). Title was taken to each of the properties as tenants in common with an equal interest allocated to each partner. (Id.) The Fresno Properties were purchased with secured financing from a bank; the purchase of the Pittsburgh Property involved unsecured financing from the seller and secured financing from a bank.[1]

On December 20, 2012, Defendant and his wife jointly filed for Chapter 7 bankruptcy protection in the Bankruptcy Court for the Eastern District of Pennsylvania. (Id. at ¶¶ 48-68.) In the Statement of Intention section of the bankruptcy petition, Defendant stated he intended to "retain collateral and continue to make regular payments" on financing obligations of the Fresno and Pittsburgh Properties. (Id. at ¶ 49.)

Plaintiff asserts that the properties were "passed-through" the bankruptcy, and returned to Defendant. Likewise, he contends that the loan obligations on these properties were not administered during bankruptcy but also were also "passed-through" bankruptcy and back to Defendant. In May 2013, Defendant obtained a discharge from bankruptcy.

After discharge, Plaintiff entered into settlement agreements with the seller of the Pittsburgh Property and with the lenders on some, if not all, of the Fresno and Pittsburgh properties. He contends the settlement agreements related to unfinished partnership business and included payment of $180,000 to the seller and $200,000 to the bank on partnership obligations. Plaintiff also asserts that he spent $40,000 of his own funds on partnership operating expenses and paid $40,000 in attorneys' fees for the benefit of the partnership.

On September 14, 2015, Plaintiff filed the instant complaint in the Mariposa County Superior Court. (ECF No. 1-2.) The complaint alleged five causes of action

---

[1] The partnership purchased other properties not relevant to the present dispute, including condominiums in Reno, Nevada, Pittsburgh, Pennsylvania, and Kissimmee, Florida. (Id. at ¶¶ 26-47.) The Nevada and Florida units were sold in short sale transactions in 2012 and 2011, respectively. (Id.) The Pennsylvania purchase was assigned to a different purchaser in 2007, at a $47,000 profit. (Id.)

against Defendant: 1) contribution for breach of the partnership obligation of good faith and fair dealing; 2) promissory estoppel to assume partnership obligations based on Defendant's post-bankruptcy petition actions; 3) damages for Defendant's intentional misconduct and misrepresentations during his bankruptcy proceeding in breach of his duty of care to the partnership; 4) wrongful dissociation from the partnership; and 5) unjust enrichment. (Id.)

On November 30, 2015, Defendant removed the matter to federal court. (ECF No. 1.) On December 7, 2015, Defendant filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). (ECF No. 7.) With the motion, Defendant filed a request for judicial notice of relevant documents from Defendant's bankruptcy proceeding. (ECF No. 6.)  Plaintiff filed an opposition to the motion on February 24, 2016, and Defendant filed a reply on March 4, 2016. (ECF Nos. 22-23.) The matter was argued before the court on March 11, 20016 and taken under submission.  Accordingly, the matter stands ready for adjudication.  The parties have consented to Magistrate Judge jurisdiction for all purposes under 28 U.S.C. § 636(c)(1). (ECF Nos. 12, 16.)

**III.    DISCUSSION**

    **A.    Legal Standard**

        1.    Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. See Parks Sch. of Bus. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failing to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010) (citation & quotation marks omitted). When a complaint presents a cognizable legal

3

theory, the court may grant the motion if the complaint lacks "sufficient factual matter to state a facially plausible claim to relief." Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citation omitted).

When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." Epstein v. Wash. Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996).

2.      Granting Leave to Amend

If a court dismisses a complaint under Rule 12(b)(6), it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations & quotation marks omitted). "Dismissal of a *pro se* complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007) (citation omitted).

**B.   Judicial Notice**

Defendant requests the Court take judicial notice of the bankruptcy petition and other documents from his Chapter 7 Bankruptcy proceeding from the Eastern District of Pennsylvania. (See RJN, ECF No. 6.)

On a motion to dismiss, the court may take judicial notice of facts outside the

1    complaint without converting the motion into one for summary judgment. See, e.g., W.
2    Radio Servs. Co. v. Qwest Corp., 678 F.3d 970, 976 (9th Cir. 2012). "The court may
3    judicially notice a fact that is not subject to reasonable dispute because it . . . can be
4    accurately and readily determined from sources whose accuracy cannot reasonably be
5    questioned." Fed. R. Evid. 201(b). A request for judicial notice must be granted "if a party
6    requests it and the court is supplied with the necessary information." Id. at 201(c)(2). As
7    this language implies, the party who requests judicial notice bears the burden to show
8    the matter in question meets the description of Rule 201. Newman v. San Joaquin Delta
9    Cmty. Coll. Dist., 272 F.R.D. 505, 516 (E.D. Cal. 2011).

10   The notice requested here is of a public record based on a federal judicial
11   proceeding and an appropriate subject of judicial notice. While the court may take
12   judicial notice of the fact of filing or existence and the general meaning of words,
13   phrases, and legal expressions, documents are judicially noticeable only for the purpose
14   of determining what statements have been made, not to prove the truth of the contents.
15   But the fact that a public document may be subject to judicial notice does not establish
16   the truth of allegations or facts it reports. See, e.g., Cactus Corner, LLC v. U.S. Dep't of
17   Agric., 346 F. Supp. 2d 1075, 1100 (E.D. Cal. 2004), aff'd, 450 F.3d 428 (9th Cir. 2006).

18   The Court grants the request for judicial notice for the purpose of determining the
19   statements asserted by Defendant in the bankruptcy proceeding, but not for the truth of
20   the statements made.

21   **C.    Analysis**

22           1.    Arguments Set Forth in the Motion to Dismiss

23   Defendant, in his motion to dismiss, does not challenge the fact that he entered a
24   partnership with Plaintiff. However, he asserts that his filing for bankruptcy protection
25   disassociated him from the partnership and ultimately caused its automatic dissolution.
26   (Mot. at 2.) He makes three arguments in support of his motion for dismissal. First, he
27   asserts that the debts Plaintiff here seeks to recover were incurred prior to bankruptcy
28   and therefore discharged by the bankruptcy. Second, he argues that due to his

dissociation from, and the dissolution of, the partnership, he is not liable for any partnership actions that occurred after the bankruptcy proceeding. Finally, Defendant claims that this action is barred by the automatic stay of bankruptcy. (Id.)

Defendant's motion to dismiss does not challenge the sufficiency of any of the claims set forth in the complaint. He relies instead on the dissolution of the partnership and the operation of the bankruptcy proceeding as bars to those claims. Accordingly, this Court shall limit its review to those issues and not otherwise address the sufficiency of Plaintiff's claims.

### 2. Liability as to Conduct Prior to Bankruptcy Discharge

Plaintiff, in his opposition to the motion, asserts that his claims are based only on conduct occurring after the bankruptcy and arise out of Defendants ratification of new partnership obligations after discharge in bankruptcy.

Plaintiff alternatively contends that the discharge only extinguishes his *in personam* claim, and that he should still be able to proceed in an action against the debtor *in rem*. (Opp'n at 6.)

From the Court's perspective, although Plaintiff make claims that arise out of ownership in property, he has not brought an *in rem* action recognizable by the Court.

### 3. Applicability of the Bankruptcy Automatic Stay

Defendant in his motion to dismiss, claims that the present action is barred by the automatic stay of bankruptcy under 11 U.S.C. § 362. Plaintiff responds, properly, that the stay only operates during the pendency of the bankruptcy; it expired upon bankruptcy discharge. See 11 U.S.C. § 362(c)(2)(C). Defendant does not attempt to rehabilitate this argument in his reply. As the bankruptcy proceeding concluded several years ago, the stay is no longer in place. Defendant is not entitled to dismissal based on the automatic stay.

### 4. Determination of the Status of the Partnership

As stated, both parties concede that a partnership existed prior to the bankruptcy, but disagree as to the status of the partnership after the bankruptcy. Plaintiff concedes

that the partnership was dissolved, but contends that the activities of the prior partnership continued and/or were renewed and reaffirmed after bankruptcy and/or were necessary to complete and wind-up unfinished partnership business. (Opp'n at 2.) Specifically, he alleges that after the bankrupcy proceeding, an (unspecified) lender paid the parties cash as part of a settlement agreement with the bank on an (unspecified) obligation on (unspecified) real property. (Compl. ¶¶ 56-57.) Plaintiff asserts that the post-bankruptcy settlement agreement created new obligations and new consideration. At the hearing he argued that post-bankruptcy transaction benefited Defendant with Defendant's knowledge and participation and acceptance of the benefits.

The Court looks to California partnership law to determine the legal status of the partnership.[2] The California Revised Uniform Partnership Act ("CRUPA") defines a partnership as "an association of two or more persons to carry on as coowners a business for profit … ." Cal. Corp. Code § 16101(9); Corrales v. Corrales, 198 Cal. App. 4th 221 (2011). This partnership appears to be a 'partnership at will' where "the partners have not agreed to remain partners until the expiration of a definite term or the completion of a particular undertaking." Cal. Corp. Code § 16101(11).

CRUPA allowed for the dissociation of members of the partnership. "Under former law, a partnership was simply a group of people; when a partner died, withdrew, or was expelled, the partnership automatically dissolved and had to be reconstituted, unless the partnership agreement specifically provided otherwise." Corrales, 198 Cal. App. 4th at 227. "Dissociation permits the remaining partners to carry on partnership business without the withdrawing partner and without having to start from scratch." Id.

While dissociation does not necessarily lead to the dissolution of a partnership, it does when a partner of a two-person partnership dissociates. "[B]y definition, a partnership must consist of at least two persons." Corrales, 198 Cal. App. 4th at 227

---

[2] Plaintiff contends that the partnership was formed in California, and that the executive office and bank accounts relating to the partnership are located in California and therefore the partnership is governed by California law. Defendant does not dispute that California partnership law should apply.

(citing Cal. Corp. Code § 16101(9)). Accordingly, the dissociation of a partner of a two person partnership leads to dissolution by operation of law. (Id.) "When that happens, the dissolution procedures take over" and "[t]he partnership is wound up, its business is completed, and the partners make whatever adjustments are necessary to their own accounts after paying the creditors." Id. (citing Cal. Corp. Code § 16807.).

In this instance, Defendant's bankruptcy filing triggered his automatic dissociation from the partnership. See Cal Corp. Code § 16601(6)(a). As the partnership was a two-person partnership, his dissociation automatically triggered dissolution. Corrales, 198 Cal. App. 4th at 227. Under California law, dissociated partners are not liable for debts incurred after dissociation. See Cal Corp. Code § 16703(a). As to obligations on the investment properties incurred prior to Defendant's dissociation, Defendant would be liable. However, as noted, such obligations were subject to his bankruptcy proceeding, and appear to have been discharged.

### 5. Actions After Dissolution

Plaintiff does not appear to dispute that bankruptcy caused dissolution of the partnership. Instead, he asserts that he and defendant "ratified the continuation of the Partnership and the completion of unfinished business, through conduct including oral representations, writings, overt acts, and acquiescence that occurred both before and after Defendant's Bankruptcy petition was filed." (Compl. at ¶ 77.) Plaintiff lists Defendant's said actions (Compl. at ¶¶ 78-79) to include:  his oral re-commitment to the terms and obligations of the partnership agreement; his intent as stated in the bankruptcy petition to retain interest in partnership properties; his failure to wind up the partnership in the bankruptcy proceeding; his express waiver of counterclaims against a bank lender in return for monetary consideration from the lender; his agreement to allow Plaintiff to act as his agent on a document exchange agreement and his acceptance from Plaintiff of the exchanged documents; his acquiescence in the continued use of the joint bank account for partnership assets; and his acquiescence in Plaintiff's continuing to act with power of attorney in performing partnership  business. (Id.)

Taking Plaintiff's averments as true, as the Court of course must on addressing a motion to dismiss, he has established facial plausibility as to his claims for contributions to the partnership based on Defendant's post-bankruptcy discharge actions relating to what had been partnership property and to what had been partnership business. According to the complaint, Defendant made oral commitments to continue or renew the partnership and its pre-bankruptcy business after bankruptcy and took or allowed Plaintiff to take actions consistent therewith. Such pleadings, if proven, could support a finding that Defendant is liable to Plaintiff for contribution.

In response, Defendant argues that after dissociation of Defendant and dissolution of the partnership, Defendant only took two relevant actions: 1) he entered into an agreement with a bank on one of the properties he and Plaintiff held title to, and 2) he entered into an agreement with Plaintiff for the exchange of partnership records. (Reply at 4.) Defendant contends that Plaintiff's allegations, even if true, would not show a new partnership relationship, and that it is "nonsensical" for anyone to claim he became a new partner of the old partnership (i.e., reassumed his partnership obligations) (Id.)

On a motion to dismiss, the court cannot weigh and resolve these competing claims as to the extent and effect of Defendant's post-bankruptcy actions. Plaintiff has alleged a cognizable legal theory along with sufficient facts to support the theory and thereby defeats the attempt to dismiss the complaint. Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010). Dismissal is not appropriate at this stage of the proceeding.

**IV.   <u>ORDER</u>**

The Court hereby orders that the motion to dismiss be DENIED. (ECF No. 7.)

IT IS SO ORDERED.

Dated:   March 23, 2016                    /s/ *Michael J. Seng*
                                                          UNITED STATES MAGISTRATE JUDGE