IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EDWARD J. JOHNSON,**<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>**GERALD JOHNSON,**<br><br>　　　　　　　　　Defendant. | 1:15-cv-01793 MJS<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS COUNTERCLAIM IN REPLY**<br><br>(ECF No. 43) |
| **GERALD JOHNSON,**<br><br>　　　　　　　　　Counterclaimant,<br><br>　　v.<br><br>**EDWARD J. JOHNSON,**<br><br>　　　　　　　　　Counterdefendant. | |

**I.     Introduction**

On November 30, 2015, Defendant and Counterclaimant Gerald Johnson removed Plaintiff and Counterdefendant Edward Johnson's complaint to this Court.[1] Defendant answered and filed counterclaims. In response, on August 2, 2016, Plaintiff filed an answer to the counterclaims, and filed a counterclaim in reply. (ECF No. 42.)

---

[1] The parties are brothers and share the same last name. To avoid confusion and unnecessary verbiage, the Court will refer to the parties as Plaintiff and Defendant, respectively.

Before the Court is Defendant's motion to dismiss the counterclaim in reply, or in the alternative, require a more definite statement. (ECF No. 43.)

The counterclaim in reply contained a single claim for damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. §§ 1961 et seq. The first issue to be decided by this motion is whether civil RICO claims survive bankruptcy discharge. If the Court finds that the claims do survive, Defendant contends that the fraudulent conduct on which they rely has not been pled with sufficient particularity.

On September 9, 2016, Defendant filed an opposition to the motion. (ECF No. 44.) Plaintiff filed a reply on September 16, 2016. (ECF No. 46.) The Court took the matter under submission without oral argument on September 21, 2016. Accordingly, the matter stands ready for adjudication.[2]

## II.    Factual and Procedural Background

As described in detail in the Court's previous orders, the parties are brothers who partnered together to invest in real estate in the mid to late 2000's. The partnership purchased real property, and suffered significant losses in the housing market crash.

As a result, Defendant and his wife jointly filed a Chapter 7 bankruptcy protection in the Bankruptcy Court for the Eastern District of Pennsylvania on December 20, 2012. (Compl. at ¶¶ 48-68.) In May 2013, Defendant obtained a discharge from bankruptcy.

In Plaintiff's original complaint, he alleged state causes of action for contribution, promissory estoppel, and unjust enrichment resulting from an alleged breach of partnership and wrongful disassociation of the partnership by Defendant.

On December 7, 2015, Defendant moved to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. On March 23, 2016, the Court denied the motion to dismiss. It noted specifically that Plaintiff was entitled to assert claims relating to actions of Defendant occurring after bankruptcy discharge.

---

[2] The parties have consented to Magistrate Judge jurisdiction for all purposes under 28 U.S.C. § 636(c)(1). (ECF Nos. 12, 16.)

Defendant answered the complaint and filed five counterclaims against Plaintiff including negligence, legal malpractice, breach of fiduciary duty, breach of promissory note, and breach of contract relating to Plaintiff's alleged actions as an attorney and agent of the partnership. (ECF No. 40.)

Plaintiff filed a motion to strike and dismiss the counterclaims and the affirmative defenses to the original complaint. (ECF No. 33-35.) On June 29, 2016, the Court granted the motion in part, and required Defendant to file an amended answer and counterclaim. (ECF No. 39.) Defendant filed an amended answer and counterclaim on July 20, 2016. (ECF No. 40.)

In response, on August 2, 2016, Plaintiff filed an answer to the counterclaims and a counterclaim in reply. (ECF No. 42.) In the counterclaim in reply, Plaintiff brings a civil RICO claim alleging that Defendant engaged in a pattern of criminal activity including acts of tax, real estate, and bankruptcy fraud that resulted in harm to Plaintiff.

The factual underpinnings for the civil RICO counterclaim in reply involve Defendant's plan for the purchase of a commercial property in Pittsburgh, Pennsylvania (the "Pittsburgh Property"). (ECF No. 42 at ¶ 73.) From 2006 to 2009, Defendant e-mailed Plaintiff to induce the partnership to purchase and finance the property. Defendant was a licensed real estate salesperson in the state of Pennsylvania. (Id. at ¶ 74.) Plaintiff contends that Defendant should have known that real estate markets were declining during that time period and that the investment potential was limited, but instead he misrepresented data to Plaintiff to induce him to purchase. (Id. at ¶ 75.)

In December, 2008 Plaintiff sent a termination of sale letter to Defendant regarding the property. (Id. at ¶ 85.) In response, Defendant told Plaintiff that they had been threatened with litigation by several parties based on costs incurred for change orders that Defendant authorized without Plaintiff's permission. (Id. at ¶ 86.) Moreover, Defendant continued to misrepresent that the purchase was a worthwhile investment, and the sale was consummated in April 2009. (Id. at ¶¶ 87-89.) Plaintiff and Defendant were not able to refinance or lease the property, and default and foreclosure resulted

financially harming Plaintiff. (Id. at ¶ 89.)

In presenting the civil RICO claim, Plaintiff asserts that in addition to the alleged misrepresentations made to persuade Plaintiff to purchase the property, Defendant made misrepresentations in his subsequent bankruptcy in an attempt to transfer all debts, obligations, and pending legal actions to Plaintiff. (Id. at ¶ 95.) Plaintiff claims that such actions constituted bankruptcy fraud. Plaintiff asserts that Defendant represented in his bankruptcy petition that certain real property was exempt retirement plan property in order to prevent its liquidation in the bankruptcy estate. (Id.) Plaintiff also contends that Defendant committed fraud in the bankruptcy proceeding by failing to continue to make payments on his residence before he moved to the exempt real property. (Id.) Plaintiff also contends that the act was a prohibited transaction under the Internal Revenue Code and a taxable event, but that Defendant has failed to report or pay the required taxes. (Id.) Plaintiff contends that Defendant received rental income from as early as 2007 that was not reported to the bankruptcy court or the IRS, thereby constituting both bankruptcy and tax fraud. (Id.) Specifically, Plaintiff contends that Defendant committed tax fraud when he obtained taxable benefits and rental income from the exempt retirement plan property as early as 2007, failed to report taxable benefits and income from that asset on his tax returns, concealed the benefits from the bankruptcy trustee, and failed to pay taxes owed on the income. (ECF No. 42 at ¶ 110.)

Plaintiff claims that the above acts constitute continuing and numerous qualifying racketeering acts based on tax, wire, and mail fraud. (Id. at ¶ 112.) Plaintiff states:

> The pattern of RICO fraud began with the continuing tax fraud involving "plan" property from approximately 2007 through 2012 which was used as a foundation for Defendant's later bankruptcy petition, continued with real estate fraud in 2008-09, continued through the 2012 through 2013 pendency of the fraudulent bankruptcy filing, and continues through this day with the continuing tax fraud involving the very same "plan" property for which rental income was concealed and which was reported as exempt to the bankruptcy court. The common motive behind all schemes is retirement security. This continuing pattern of fraud poses a threat of continued criminal activity in continuing pursuit of that motive. (ECF No. 42 at ¶ 113.)

4

### III. Legal Standard for Motion to Dismiss

#### A. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. See Parks Sch. of Bus. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failing to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010) (citation & quotation marks omitted). When a complaint presents a cognizable legal theory, the court may grant the motion if the complaint lacks "sufficient factual matter to state a facially plausible claim to relief." Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citation omitted).

When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." Epstein v. Wash. Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996).

#### B. Granting Leave to Amend

If a court dismisses a complaint under Rule 12(b)(6), it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made,

unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations & quotation marks omitted).

**IV.   Discussion**

   **A.   Counterclaim in Reply**

Defendant has moved to dismiss Plaintiff's counterclaim in reply. The Court will first determine whether the claim is procedurally appropriate as a counterclaim in reply, or whether it should be filed as a claim in an amended complaint.

While not expressly authorized by the Federal Rules of Civil Procedure, the Ninth Circuit has allowed counterclaims in reply, but only if they are compulsory in nature. Mattel, Inc. v. MGA Entm't, Inc., 705 F.3d 1108, 1110-1111 (9th Cir. 2013) (citing Davis & Cox v. Summa Corp., 751 F.2d 1507, 1525 (9th Cir. 1985)). To be compulsory, a counterclaim must "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed R. Civ. P. 13(a)(1)(A). The logical relationship test applies for compulsory counterclaims. Mattel, Inc., 705 F.3d at 1110-1111 (citing In re Pegasus Gold Corp., 394 F.3d 1189, 1195-96 (9th Cir. 2005)). "A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." Id.

What matters is not the legal theory but the facts. Id. "[E]ven the most liberal construction of ['transaction'] cannot operate to make a counterclaim that arises out of an entirely different or independent transaction or occurrence compulsory under Rule 13(a)." Id. (citing 6 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1410, at 52 (3d ed. 2010)).

To the extent that the counterclaim is not compulsory pursuant to Rule 13(a), the claim is permissive, and Plaintiff would be required to seek leave to amend to add the claim in an amended complaint. See Vieste, LLC v. Hill Redwood Dev., 2011 U.S. Dist.

LEXIS 157915, 9-10 (N.D. Cal. Apr. 5, 2011). Regardless, counterclaims in reply are generally disfavored; rather, such claims should be treated an amendment to the complaint under Federal Rule of Civil Procedure 15. See The Rutter Group, Civil Procedure Before Trial, Shwarzer & Tashima § 8:1280.4; Wright & Miller, Federal Practice and Procedure: Civil 3d § 1188 (arguing that courts should not allow permissive counterclaims in reply, but that parties should seek leave to amend their complaint instead); Electroglas, Inc. v. Dynatex Corp., 473 F. Supp. 1167, 1171 (N.D. Cal. 1979) ("For reasons of clarity and practicality, it would be better to treat a 'counterclaim in reply' as an amendment to the complaint."); Fujitsu Ltd. v. Nanya Tech. Corp., 2007 U.S. Dist. LEXIS 44386 (N.D. Cal. June 6, 2007) (directing party to amend complaint to add counterclaims in reply to simplify the pleadings).

The counterclaim in reply presented here is based on Defendant's alleged pattern of criminal behavior including tax, real estate, and bankruptcy acts constituting racketeering. The claims necessarily therefore are based on actions of Defendant in committing that conduct. Defendant's claims, on the other hand, address legal malpractice, breach of duty, and breach of contract by Plaintiff, and will necessarily be factually based on Plaintiff's conduct, not Defendants. The Court does not find the claims to be compulsory. Even if the claim is compulsory, the Court holds that for simplicity's sake, all of Plaintiffs claims should be contained in one complaint.[3]

In an exercise of judicial efficiency, the Court will consider Plaintiffs' counterclaim in reply as a request to amend the complaint.

Rule 15(a) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been served, a party may amend its complaint only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires," and apply this policy with "extreme

---

[3] It appears the usual reason to file a counterclaim in reply rather than moving to amend the complaint is the lack of ability to amend the complaint (i.e., the motion to amend deadline has already passed). Here, there appears to be no such concern. The Court has yet to hold an initial scheduling conference or set a deadline for amendments.

liberality." Id.; DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987). The Court considers five factors in assessing a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of the amendment, and (5) whether the plaintiff has previously amended the complaint. Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004); see also Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). The party opposing amendment bears the burden of showing any of the factors above. See DCD Programs, 833 F.2d at 186. Plaintiff's civil RICO claim was filed during the pendency of the pleading stage of this proceeding. The Court has yet to set a deadline for discovery or a trial date. Defendant is not prejudiced by the amendment. Accordingly, Plaintiff is provided leave to amend. Plaintiff is hereby ordered to incorporate the counterclaim in reply into an amended complaint.

### B.     Effect of the Bankruptcy Discharge

#### 1.     Parties' Arguments

The main contention raised in the motion to dismiss is that Defendant's bankruptcy discharge prevents Plaintiff from seeking pre-discharge damages from Defendant.  Plaintiff responds that the bankruptcy proceeding itself was used as a vehicle for Defendant to effectuate fraudulent acts against Plaintiff and therefore allowable as part of Petitioner's civil RICO claim. (See ECF No. 44 at 9 ("[T]hose discharged debts were themselves the injuries Plaintiff sustained as a result of Defendant's pattern of racketeering activity.").)

Plaintiff appears to focus on two main arguments. First, he contends that the bankruptcy discharge does not prevent recovery for criminal acts occurring prior to discharge and so the civil RICO claims survive bankruptcy. Second, Plaintiff argues that the civil RICO claim is based on continuing conduct occurring post-bankruptcy discharge.

The Court will address the parties' arguments in turn.

#### 2.     Analysis

Defendant contends that his debts were discharged by his bankruptcy

proceeding, and the only avenue to challenge the discharge was to seek revocation of the discharge under 11 U.S.C. § 727(d-e). The Court agrees.

In general, bankruptcy discharge serves to void any judgment as to personal liability debts of the debtor. 11 U.S.C. § 524(a)(1); 2-524 Collier Bankruptcy Manual § 524.01. Bankruptcy discharge also operates as an injunction against the commencement or continuation of an action to collect, recover or offset any discharged debt as a personal liability of the debtor. Id. at § 524(a)(2). Thus, bankruptcy discharge protects the debtor from a subsequent suit in a state court, or any other act to collect, by a creditor whose claim had been discharged. 4-524 Collier on Bankruptcy § 524.02.

The definition of debt under the Bankruptcy Code has been interpreted broadly. "Under the Bankruptcy Code, 'debt' means 'liability on a claim,' 11 U.S.C. § 101(12), and 'claim,' in turn, includes any 'right to payment,' § 101(5)(A)." FCC v. NextWave Pers. Communs. Inc., 537 U.S. 293, 302-303 (2003). The Supreme Court has held that 'claim' has "the broadest available definition," and that the "plain meaning of a right to payment is nothing more nor less than an enforceable obligation…" NextWave Pers. Communs. Inc., 537 U.S. at 302-303 (citing Johnson v. Home State Bank, 501 U.S. 78, 83 (1991); Pennsylvania Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 559 (1990)).

Plaintiff has provided the Court insufficient authority as to why his legal claim for right of payment under civil RICO is not subject to the injunctive power of Defendant's bankruptcy discharge. Plaintiff previously conceded that his original claims stated in his complaint for breach of partnership are subject to Defendant's bankruptcy discharge. (ECF No. 26 at 6:10-12.) In his opposition, Plaintiff explains that the RICO claim "does not address pre-discharge behavior exclusively," but that the conduct at issue continues to the present. (Opp'n at 7-8.) Plaintiff also explains that the claim is not limited to damages arising pre-bankruptcy, but includes damages arising post discharge. (Id.)

While the Court agrees that Plaintiff is entitled to seek damages relating to post-discharge conduct of Defendant, Plaintiffs statements make clear that he is seeking damages for pre-discharge conduct. Plaintiff states that "any allegedly discharged debts

are among the injuries that were directly and proximately caused by Defendant's bankruptcy fraud RICO predicate and pattern of racketeering activity, and are thus actionable RICO injuries." See Opp'n at 8. He also claims that the "discharged debts were themselves the injuries Plaintiff sustained as a result of Defendant's pattern of racketeering activity," and "that Plaintiff was injured by the fraudulently obtained discharge." (Id. at 9.)

In Plaintiff's view, it appears that claims of Civil RICO are not subject to bankruptcy discharge, and moreover, the discharge itself, if fraudulent and part of the pattern of racketeering, can form the basis of the claim. It is true that certain types of debt are excepted from discharge including those arising from fraud or embezzlement, or debt based on criminal restitution orders under Title 18 of the United States Code. 11 U.S.C. § 523(a). However, the applicable provisions of 11 U.S.C. § 524 and the contents of the discharge order apply to debts that might have been found nondischargeable under subsection 523(a) (such as fraud), but for which complaints to determine dischargeability were not timely filed. 4-524 Collier on Bankruptcy § 524.02. Once the debt is discharged, even if it a debt that may have been excluded from discharge, it will be considered discharged unless a creditor files for revocation of the discharge within a year. 11 U.S.C. § 727(d-e).

Plaintiff neither argues that the debt was excepted from discharge, nor that he sought to revoke the discharge within the relevant period. Accordingly, Defendant's discharge remains in effect with regard to the debt in question, even if procured by fraud, as asserted by Plaintiff.

Next the Court turns to Plaintiff's contention that the cause of action for Civil RICO is somehow not subject to discharge of debts under bankruptcy laws. The statutory language creating a civil action for RICO states:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter [18 USCS § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee…

18 U.S.C. § 1964(c). The civil cause of action created by RICO entitles parties to create an enforceable legal obligation to a right to payment if the elements of the action are proven in a civil action. The civil RICO action is not part of a criminal RICO prosecution, and may be brought by a party regardless whether a criminal action was ever initiated by the government.

The civil RICO action appears to be a claim, as broadly defined by the Supreme Court, under the Bankruptcy Code. See NextWave Pers. Communs. Inc., 537 U.S. at 302-303. Further, a review of cases shows that courts have treated civil RICO claims the same as any other bankruptcy claims. In Katahn Assocs. v. Wien, 155 B.R. 479, 489-490 (Bankr. N.D. Ill. 1993), the creditor obtained a civil judgment in a RICO action, and after the fact, the debtor filed for bankruptcy protection. The creditor initiated an adversary proceeding during the bankruptcy to determine whether the debts associated with the judgment were non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6) as they were based on debtor's fraudulent acts that were both willful and malicious. Id. The bankruptcy court found for the creditors and excluded the debt from the bankruptcy discharge. Id. While the debt was excluded, not only was it incumbent on the creditor to move to have the bankruptcy court determine the debt was non dischargeable, the burden of proof was on creditor to show that the debt was based on fraudulent acts. Id. at 487. Other courts have issued similar rulings. See Metromedia Co. v. Fugazy, 157 B.R. 761, 765-766 (Bankr. S.D.N.Y. 1993).

In Walsh v. Jordan, 1990 U.S. Dist. LEXIS 6121, 4-5 (N.D. Ill. May 18, 1990), the court found that the creditor failed to move before the bankruptcy court to find the debts relating to a civil RICO claim to be non-dischargeable based on fraud. Accordingly, the court found the creditor unable to seek relief in a separate subsequent action for such debts:

> Plaintiff's claims in the instant action are grounded in fraud, either common law or as predicate acts of RICO. Certain debts are exceptions to the discharge of an individual debtor and survive a discharge in bankruptcy. Debts based on fraud and RICO are encompassed within Section 523(a)(2) and (4) and are generally non-dischargeable. A creditor cannot,

11

> however, sit on his hands and not take action in order to establish the fact and nature of his claim, particularly as to its non-dischargeability features. When a creditor has actual notice of bankruptcy, he cannot ignore the bankruptcy proceeding and therefore seek to recover damages in another court and in another proceeding.

Id.

Plaintiff has not provided and the Court is not aware of any legal authority that exempts civil RICO claims from the rules of bankruptcy. As Plaintiff did not attempt to challenge the dischargeability of the debt in the bankruptcy proceeding, he may not now assert claims for debt arising from Defendant's pre-discharge conduct. Defendant's motion to dismiss is granted, in part.

However, Plaintiff alleges damages based on Defendant's post-discharge conduct. To the extent that Plaintiff attempts to assert a civil RICO action based on Defendant's actions after the bankruptcy, he may file an amended complaint reasserting the claim.

### C. Pleading Fraud with Particularity

To state a claim under § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted); Odom v. Microsoft Corp., 486 F.3d 541, 547-548 (9th Cir. 2007). In this case, Plaintiff has identified bankruptcy, mortgage and tax fraud as predicate acts of "racketeering activity." However, Defendant alleges that Plaintiff has not pled fraud with particularity.

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud," while "[m]alice, intent, knowledge, and other conditions of a person's mind may be averred generally." Sanford v. MemberWorks, Inc., 625 F.3d 550, 557-558 (9th Cir. 2010). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Id. (citing Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009). "To avoid dismissal for inadequacy under Rule

9(b), [the] complaint would need to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Id. (citing Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004).) Courts have routinely applied the particularity requirement to fraudulent activity that is the predicate offense of civil RICO claims. Sanford, 625 F.3d at 557-558; Odom, 486 F.3d at 547-548.

Plaintiff's factual assertions in support of his civil RICO claim appear to characterize pre-discharge conduct of Defendant as real estate and bankruptcy fraud. Plaintiff alleges that the real estate fraud involved the sale of the Pittsburgh Property. ECF No. 42 at ¶ 95. ("Defendant used his influence as a licenced real estate professional to misrepresent the benefit of the purchase [of the Pittsburgh Property] to induce Plaintiff into completing the sale, constituting real estate fraud.") (ECF No. 42 at ¶ 42.) The sale occurred in 2009, and therefore is subject to the bankruptcy discharge. Further, the claims of bankruptcy fraud relate to alleged fraudulent acts of Defendant in obtaining the bankruptcy discharge, and likewise are inactionable given the discharge. The only factual allegations that support tax fraud occurring post-discharge state that the tax fraud "continues through this day with the continuing tax fraud involving the very same 'plan' property for which rental income was concealed and which was reported as exempt to the bankruptcy court." (Id. at ¶ 113.)

The Court finds Plaintiff's allegations of predicate offenses for post-discharge fraud lack particularity. The factual allegations in the counterclaim in reply do not give Defendant sufficient information to properly defend the claim. Defendant's request for a more definite statement is granted. To the extent that Plaintiff desires to pursue a civil RICO claim based on the post-discharge actions, he must allege such claims with further particularity in an amended complaint.

**V.     Order**

The Court hereby orders that the motion to dismiss be GRANTED IN PART. Plaintiff may not pursue any claims for damages against Defendant arising from pre-bankruptcy discharge conduct. To the extent that Plaintiff's civil RICO claim was based

13

on such conduct, it is dismissed. However, Plaintiff is given leave to amend to allege such a claim based on post-discharge behavior. Defendant's motion requiring Plaintiff to provide a more definite statement of the claims is granted. If Plaintiff chooses to so amend, he must allege with specificity the fraudulent conduct of Defendant and he must do so within twenty-one (21) days of the date of service of this Order.

IT IS SO ORDERED.

Dated:   September 21, 2016            /s/ *Michael J. Seng*
                                        UNITED STATES MAGISTRATE JUDGE